IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | | |
|---|---|---|
| RICKY MOSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 619-100 |
| | ) | |
| HAROLD CARAVIELLO, Physicians' Assistant, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, currently incarcerated at Smith State Prison, is proceeding *pro se* and *in forma pauperis* ("IFP") in this civil rights case, filed pursuant to 42 U.S.C. § 1983. Before the Court are Defendant's motion for summary judgment and Plaintiff's opposition thereto. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendant's motion for summary judgment be **GRANTED**, (doc. no. 31), a final judgment be entered in favor of Defendant, and this civil action be **CLOSED**.

I.  **PROCEDURAL BACKGROUND**

Plaintiff originally named four Defendants in his complaint. However, as Plaintiff is proceeding IFP, the Court screened the complaint, dismissed two Defendants, and directed the United States Marshal to serve two Defendants based on Plaintiff's Eighth Amendment medical deliberate indifference claim. (See doc. nos. 10, 11, 16.) When the Marshal could not locate one of the remaining two Defendants, the Court provided Plaintiff additional time to provide valid identifying information, but receiving nothing further from Plaintiff, dismissed the

unserved Defendant. (See doc. nos. 23, 24, 30.)

As clarified at Plaintiff's deposition, his claim against the sole remaining Defendant, Physicians' Assistant ("PA") Harold Caraviello, is based on Defendant's failure take an x-ray of, and place a cast on, Plaintiff's injured arm on the first, and only, day he examined Plaintiff, March 3, 2018. (Pl.'s Dep., doc. no. 31-6, pp. 10, 13-14.[1])

When Defendant filed his motion for summary judgment, the Clerk issued a notice concerning the summary judgment motion and the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of failing to comply with the requirements for responding. (See doc. no. 32.) The Court also issued its own order granting Plaintiff an extension of time to respond to Defendant's motion and again explained the rights and requirements associated with responding. (Doc. no. 33.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*), are satisfied.[2]

## II.  FACTS

### A.  Scope of Undisputed Facts

In accordance with Local Rule 56.1, Defendant submitted with his motion for summary judgment a Statement of Material Facts In Support of His Motion for Summary Judgment. (Doc. no. 31-2, hereinafter "SMF").) As evidentiary support for his SMF, Defendant relies on

---

[1]For ease of reference, the Court cites page number assigned by the Court's docketing system when citing to Plaintiff's deposition.

[2]The Court also explained summary judgment motions, along with the rights and requirements associated with responding, in its February 20, 2020 Order. (Doc. no. 10, pp. 5-6.)

his notarized affidavit based on his personal knowledge and the exhibits attached thereto. (Def.'s Aff., doc. no 31-4; Exhibits B through BB, doc. no. 31-5.) The exhibits are copies of various portions of Plaintiff's medical records, the authenticity of which have not been challenged. The Court deems admitted all facts in the SMF which find support in the record and Plaintiff has not properly opposed. See Scoggins v. Arrow Trucking Co., 92 F.Supp.2d 1372, 1373 n.1 (S.D. Ga. 2000); Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (*per curiam*) (finding no error in deeming defendants' statements of material fact admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objection to statement).

Plaintiff's opposition papers do not respond to each fact in the SMF and consist of unsworn, conclusory allegations, most of which are inadmissible evidence for purposes of opposing Defendant's motion for summary judgment. See Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005) (requiring consideration of only admissible evidence when ruling on motions for summary judgment); see also Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (finding summary judgment appropriate where inmate produced nothing beyond "his own conclusory allegations" challenging actions of defendant); Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose summary judgment.").

Plaintiff submitted an "Affidavit," in which he recites the allegations of his complaint, cites to the chronology of medical treatment contained in the exhibits attached to Defendant's affidavit, and concludes Defendant "could have got me the adequate medical treatment for my arm on March 3, 2018, by making a phone call and getting me sent to the hospital." (Pl.'s Aff.,

doc. no. 36, ¶ 14.) There is no additional medical information provided and no medical opinion or information challenging the course of treatment evident in the medical records. "Unsupported, conclusory allegations that a plaintiff suffered a constitutionally cognizant injury are insufficient to withstand a motion for summary judgment." Howard v. Memnon, 572 F. App'x 692, 695 (11th Cir. 2014) (*per curiam*) (citing Bennett v. Parker, 898 F.2d 1530, 1532-34 (11th Cir. 1990)); see also Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) ("[O]ne who resists summary judgment must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial.").

In addition, the affidavit was not notarized and does not contain the permissible alternate language from 28 U.S.C. § 1746 that Plaintiff "declare(s) under penalty of perjury" that the information in the affidavit is "true and correct." Rather Plaintiff states he gives the affidavit "freely for use as evidence to my personal knowledge of the facts stated herein to be true." (Pl.'s Aff. ¶ 1.) An affidavit or declaration used to oppose a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(1) & (4).

Similarly, the verification to Plaintiff's complaint states, "I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct." (Doc. no. 1, p. 16.) However, if a verified pleading is to be used as opposition to a summary judgment motion, it must be based on personal knowledge, not information and belief. Harrison v. Culliver, 746 F.3d 1288, 1299

n.16 (11th Cir. 2014) (finding statement made "[t]o the best of [a plaintiff's] belief and knowledge" insufficient to create genuine issue of fact because statement not based on personal knowledge); Ramsey v. GMAC Mortg. Corp., Civ. Action File No. 3:10-cv-85-TCB, 2012 WL 13028221, at *2 (N.D. Ga. May 10, 2012).  There is no delineation within the complaint as to which matters are alleged on information and belief.  (See generally doc. no. 1.)  "Under these circumstances, the Court can only speculate as to which, if any, of [Plaintiff's] factual allegations are based upon his personal knowledge.  Therefore, [Plaintiff] cannot rely on the facts alleged in his complaint to defeat summary judgment." Id.

However, Plaintiff provided sworn testimony at his deposition, and the Court will consider his testimony in its analysis.  (See Pl.'s Dep.)  Accordingly, the Court will review the record, including Plaintiff's sworn deposition, "to determine if there is, indeed, no genuine issue of material fact." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009).

**B.    Plaintiff's Medical Care**

Plaintiff injured his left arm on the recreation yard at Georgia State Prison ("GSP") on the afternoon of March 2, 2018.  (Pl.'s Dep., pp. 8-9.)  As there was not a correctional officer available to take Plaintiff to the medical department at the time of the injury, Plaintiff's arm was not examined until the next morning.  (Id. at 9.)  When Plaintiff first saw a nurse at 7:50 a.m. on March 3, 2018, his arm was swollen, and he had limited mobility.  (Id. at 9-10; doc. no. 31-5, p. 1.)  The nurse provided Plaintiff with pain medication, advised Plaintiff not to mobilize his left forearm or wrist, and instructed him to keep his arm in a sling until he could be seen by an advanced provider and an x-ray could be taken.  (Doc. no. 31-5, pp. 1-2.)

5

Defendant Caraviello, a licensed PA since 1986 who worked at GSP from 2016 to 2019, saw Plaintiff on March 3rd pursuant to the advanced provider referral. (Def.'s Aff. ¶ 2, 9; doc. no. 31-5, pp. 3-4.) Defendant's examination revealed no wrist drop, normal extension/flexion of the left forearm, pain with supination and pronation to the forearm but not the elbow, and normal movement in the shoulder. (Def.'s Aff. ¶ 9; doc. no. 31-5, p. 3.) Defendant assessed Plaintiff had a left forearm injury with suspected mid-forearm closed fracture and prescribed ice, elevation of the forearm, and Tylenol 3 with Codeine twice a day, along with continuation of the sling. (Def.'s Aff. ¶ 9; doc. no. 31-5, p. 3.) Plaintiff did not have an open fracture or other condition with respect to his left arm that would have required immediately sending him to an off-site hospital for an immediate x-ray. (Def.'s Aff. ¶ 12.)

Defendant also ordered an orthopedic consultation for further evaluation, as there was no "in-house" orthopedic physician at GSP, and wrote an order for an x-ray of Plaintiff's left forearm, as there was no on-site x-ray machine at GSP. (Def.'s Aff. ¶¶ 7, 8; doc. no. 31-5, p. 4.) At the time of Plaintiff's injury, when a GSP inmate needed outside care or specialized treatment unavailable at the prison, the medical provider had to request the specialized service by submitting a consult request through the Utilization Management Department ("UMD") of the Georgia Department of Corrections. (Def.'s Aff. ¶ 5.) Upon initiating the consult request, a clerk in prison medical department was responsible for putting the request in the UMD statewide computer, and if the request was granted, the UMD then scheduled the time, place, and manner of the requested service. (Id. ¶ 5.) Additionally, to receive an x-ray, a physician's order had to be written and approved by the GSP Medical Director. (Id. ¶ 9.)

Upon writing the order for an orthopedic consultation and x-ray, Defendant spoke with GSP Medical Director Dr. Occhipinti about the course of treatment, and the director agreed with the plan. (Id.) As a PA, Defendant did not direct the course of treatment for inmates with significant orthopedic issues such as a potential fracture, but he could request a consultation by an orthopedic physician through the UMD and then follow the orders received from the specialist after the consultation examination. (Id. ¶ 6.) In the initial orthopedic consultation request, Defendant explained Plaintiff had a left forearm injury from hitting a wall and noted physical findings of a left forearm with volar deformity 2 (soft tissue swelling of the forearm), along with symptoms of pain with pronation and supination, but Plaintiff was neurovascularly intact with no open lesions or wrist drop. (Id. ¶ 14; doc. no. 31-5, pp. 7-9.)

Defendant also noted on the consultation request Plaintiff's arm was in a sling, the proper management of a possible radial head fracture, radial neck fracture, humerus fracture or clavicle fracture, to facilitate ease with ambulation and potential physical therapy. (Def.'s Aff. ¶ 10; doc. no. 31-5, pp. 7-8.) Moreover, as Plaintiff's arm was swollen, proper injury management would not involve splinting or placement in a cast, which Defendant was not authorized to do, because splinting or casting a swollen extremity could result in neurovascular injury. (Def.'s Aff. ¶ 10.) Therefore, even if an x-ray had been taken on March 3rd, Defendant would not have changed his course of treatment for Plaintiff. (Id. ¶ 12.) Defendant did not provide any further hands-on treatment to Plaintiff after March 3, 2018. (Id. ¶ 9; Pl.'s Dep., p. 11.)

On March 5, 2018, a nurse practitioner examined Plaintiff and noted his left arm was in a sling, he was able to move his fingers, and although he was tender to the touch on his left

7

arm, Plaintiff stated he was "doing ok on pain meds." (Def.'s Aff. ¶ 11; doc. no. 31-5, p. 5.) The nurse practitioner's note also states Plaintiff was scheduled to have an x-ray the next day. (Doc. no. 31-5, p. 5.) Although Plaintiff does not recall having an x-ray on March 6, 2018, (Pl.'s Dep., pp. 11-12), the medical records confirm an x-ray of his left forearm revealing a "[q]uestion of a subtle nondisplaced fracture of the radial neck and tiny avulsion fracture of the coronoid," with a recommended follow up with dedicated x-rays of the left elbow. (Doc. no. 31-5, p. 6; see also id. at 10-11 (memorializing March 6th x-ray results).) The specialist who saw Plaintiff on March 6th, Dr. Mark Winchell, diagnosed Plaintiff with a contusion of the left elbow and forearm but saw no fracture in the elbow. (Def.'s Aff. ¶ 15; doc. no. 31-5, pp. 7-9; Pl.'s Dep., p. 13.)

Following a visit with PA Tolbert on March 28, 2018, wherein Plaintiff complained of continued left elbow pain, PA Tolbert requested another orthopedic consult based on "new findings seen on x-ray," resulting in a March 29, 2018 examination by Dr. James Barber. (Doc. no. 31-5, pp. 10-13.) Dr. Barber ordered a sugar tong splint - an incomplete cast with openings on the sides so that it can be easily removed and replaced - physical therapy, and a follow up visit in three weeks. (Id. at 11; Def.'s Aff. ¶ 17.) Plaintiff's subsequent treatment included consultation examinations with orthopedic physicians on April 19, 2018, (doc. no. 31-5, p. 16), May 24, 2018, (id. at 22 ("healing very well")), and August 23, 2018, (id. at 27), as well as numerous physical therapy sessions between April 11, 2018, and June 4, 2018, (id. at 14-15, 20, 23-24). When Plaintiff saw Dr. Barber on August 23, 2018, he provided Plaintiff with a cortisone shot for tenderness in his left elbow but also noted a current x-ray showed a fully

healed radial head left fracture.  (Id. at 27.)  Despite the fully healed fracture, Plaintiff is unable to turn his left palm fully upward, as he can with his dominant right hand.  (Pl.'s Dep., p. 14.)

## III.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party."  United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*).  On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial.  Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  Id. at 608.  The non-moving party cannot carry its burden by relying on the

pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Defendant Is Entitled to Summary Judgment on the Merits of Plaintiff's Eighth Amendment Claim

Defendant contends he is entitled to summary judgment on the merits of Plaintiff's Eighth Amendment claim, and in the alternative, he is entitled to the protection of qualified immunity. Plaintiff argues Defendant's motion should be denied because Defendant, knowing there was no orthopedic specialist or x-ray machine at GSP, should have obtained immediate treatment for Plaintiff at a hospital on March 3, 2018.

#### 1. Deliberate Indifference Standard

The Eighth Amendment requires that prisoners are afforded adequate food, clothing, shelter, and medical care, and prison officials must take reasonable measures to ensure prisoner safety. Farmer v. Brennan, 511 U.S. 825, 832 (1994). To survive Defendant's motion for summary judgment, Plaintiff must produce evidence from which a reasonable jury could conclude (1) he had a serious medical need – the objective component, (2) Defendant acted with deliberate indifference to that need – the subjective component, and (3) his injury was caused by Defendant's wrongful conduct. Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir.

2016) (*per curiam*); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010) (explaining that in addition to objective and subjective components of Eighth Amendment claim, plaintiff must "show a causal connection between the constitutional violation and his injuries" to prevail on any § 1983 claim).  To satisfy the objective component regarding a serious medical need, a prisoner must demonstrate that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007)  (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).

To satisfy the subjective component that Defendant was deliberately indifferent, Plaintiff must offer some proof that Defendant:  (1) was subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendant disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Melton, 841 F.3d at 1223.  "A prisoner must show the defendant prison officials acted with a sufficiently culpable state of mind." Chandler v. Crosby, 379 F.3d 1278, 1290 (11th Cir. 2004) (citations omitted).  Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference.  Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); see also Palazon v. Sec'y for Dep't of Corr., 361 F. App'x 88, 89 (11th Cir. 2010) (*per curiam*) (requiring more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law" to establish deliberate indifference claim).

Furthermore, the Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris, 941 F.2d at 1510 (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986). Neither does a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010) (*per curiam*); Harris, 941 F.2d at 1505; Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989). That is, the burden of proving deliberate indifference cannot be met simply by arguing that an inmate wanted a different type of treatment. Hamm v. DeKalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985) ("Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments. . . .").

In addition, a plaintiff alleging liability for deliberate indifference based on a delay in medical treatment "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Hill, 40 F.3d at 1188, *abrogated in part on other grounds by* Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002); see also Farrow v. West, 320 F.3d 1235, 1244 n.12 (11th Cir. 2003) ("In Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme Court criticized part of the qualified immunity analysis in Hill, but not Hill's analysis of what constitutes a serious medical need of prisoners.").

### 2. Defendant Caraviello Is Entitled To Summary Judgment Because Plaintiff Merely Has a Disagreement with Him over the Course of Treatment Prescribed

The parties do not argue about whether the injury to Plaintiff's left forearm constituted a serious medical need. Therefore, the Court turns to the subjective component: was Defendant subjectively aware of a serious risk to Plaintiff's health that he disregarded by acting in a manner that constituted "more than mere negligence." Melton, 841 F.3d at 1223. The facts alleged by Plaintiff during his deposition, when coupled with facts proffered by the defense that Plaintiff has not disputed, establish beyond peradventure Defendant was not deliberately indifferent.

Plaintiff maintains Defendant should have secured immediately an x-ray of Plaintiff's left arm on March 3, 2018, as well as put his arm in cast that same day. (Pl.'s Dep., p.15.) There is no dispute an x-ray machine was not available at GSP on March 3rd or that Plaintiff's left arm was swollen when he saw Defendant on March 3rd. (Def.'s Aff. ¶¶ 7, 8; Pl.'s Dep., p. 9; Pl.'s Aff. ¶ 5.) Defendant's initial examination noted soft tissue swelling of Plaintiff's left forearm and associated pain, but Plaintiff was neurovascularly intact with no open lesions or wrist drop. (Def.'s Aff. ¶ 14; doc. no. 31-5, pp. 7-9.) Because Plaintiff's arm was swollen, placement of a splint or cast could have resulted in neurovascular injury, and Defendant would therefore have not changed the course of treatment on March 3rd, even if an x-ray had been taken that day. (Def.'s Aff. ¶¶ 10, 12.) Thus, Defendant continued Plaintiff with a sling, the proper management of a possible radial head fracture, radial neck fracture, humerus fracture, or clavicle fracture. (Def.'s Aff. ¶ 10.) Plaintiff offers no medical opinion or evidence suggesting an immediate x-ray or cast was necessary or appropriate.

Contrary to Plaintiff's assertion Defendant could have made a phone call to have Plaintiff immediately transported to the hospital, (doc. no. 36, pp. 3; Pl.'s Aff. ¶ 15), at the time of Plaintiff's injury, if an inmate needed outside care or specialized treatment unavailable at GSP, a request had to be submitted for approval via the UMD, which was then responsible for scheduling the time, place, and manner of the requested service, (Def.'s Aff. ¶ 5). Similarly, a request for an x-ray had to be approved by the GSP Medical Director. (Id. ¶ 9.) After examining Plaintiff and determining an orthopedic consultation and x-ray should be ordered, Defendant spoke with the GSP Medical Director Dr. Occhipinti, who agreed with the treatment plan. (Id.) Moreover, Plaintiff did not have an open fracture or other condition with respect to his left arm that would have required immediately sending him to an off-site hospital for an immediate x-ray. (Id. ¶ 12.)

Nor, as Plaintiff alleged in his complaint, (doc. no. 1, pp. 8-9), did he have to wait nearly two weeks for an x-ray. Rather, medical records confirm an x-ray and orthopedic examination on March 6th, resulting in a diagnosis of a contusion of the left elbow and forearm but no fracture observed in the elbow. (Def.'s Aff. ¶ 15; doc. no. 31-5, pp. 7-9; Pl.'s Dep., p. 13.) It was not until a follow-up visit with a different orthopedic doctor on March 29, 2018, that new x-ray findings resulted in ordering a sugar tong splint for Plaintiff. (Doc. no. 31-5, pp. 10-13.) The medical records further confirm Plaintiff received pain medication as needed, multiple physical therapy sessions, and multiple follow up examinations by orthopedic doctors. (See generally doc. no. 31-5.)

The crux of Plaintiff's Eighth Amendment claim is that he believes Defendant should have followed a different course of treatment the one and only time he examined Plaintiff on March 3, 2018. However, as explained above and repeatedly applied in the Eleventh Circuit:

> A plaintiff cannot establish deliberate indifference simply by second guessing the conclusions reached by a prison medical official in the exercise of his medical judgment. Indeed, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

Bismark v. Fisher, 213 F. App'x 892, 896 (11th Cir. 2007); see also Butler v. Prison Health Servs., Inc., 294 F. App'x 497, 499 (11th Cir. 2008) (*per curiam*) (same). Indeed, the Court should not second-guess medical judgments, particularly where, as in this case, an inmate's health concerns received significant medical attention. See Wallace v. Sheriff, 518 F. App'x 621, 622-23 (11th Cir. 2013) (*per curiam*).

Plaintiff cannot show Defendant was subjectively aware of a serious risk to Plaintiff's health, let alone that he disregarded that risk by more than mere negligence, and Defendant is entitled to summary judgment. See Melton, 841 F.3d at 1223.

### 3. Plaintiff's Claim Also Fails Because He Cannot Establish Injury

Moreover, to the extent Plaintiff alleges liability for deliberate indifference based on a delay in receiving additional treatment, he has failed to "place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." See Hill, 40 F.3d at 1188. Stated otherwise, Plaintiff's claim also fails because he does not offer any evidence he was injured by Defendant's acts or omissions with respect to any delay in obtaining an x-ray or putting a cast on Plaintiff's arm. See Cannon v. Corizon Med. Servs., 795 F. App'x 692, 698

(11th Cir. 2019) (*per curiam*). When specifically asked at his deposition the basis for his assertion his left arm would have healed better if Defendant had taken an x-ray on March 3, 2018, and placed a cast on his left arm that same day, Plaintiff, who has no formal medical training, offered nothing but his layman's opinion that his arm did not heal properly and he "probably wouldn't have been going through it if [Defendant] put a cast splint on [Plaintiff's arm] and got [Plaintiff] an x-ray immediately."[3] (Pl.'s Dep., pp. 8, 15.) No medical evidence supporting Plaintiff's conjecture exists in the record, and the undisputed facts provide no basis for a reasonable juror to find Plaintiff suffered any exacerbation or harm from Defendant's timing or course of treatment.

No medical provider suggested any type of cast or splint should be applied until nearly three weeks after the initial injury - after the swelling present on March 3 had subsided - even though an orthopedic doctor examined Plaintiff on March 6, 2018. (Doc. no. 31-5, pp. 6-11.) Moreover, Dr. Barber, the orthopedic doctor who ordered the sugar tong splint on March 29, 2018, noted in his examination records that as of May 24, 2018, surgery was not necessary, and the healing process was described as "healing very well" and "excellent healing and alignment." (Doc. no. 31-5, p. 22.) On August 23, 2018, Dr. Barber recorded a fully healed radial head left fracture. (Id. at 27.) Although Plaintiff complains of some residual pain and

---

[3]For the sake of completeness, the Court notes Plaintiff complains of a painful recovery period and resultant depression. (Pl.'s Aff. ¶¶ 11, 15.) However, as detailed herein, there is no medical evidence that Defendant's acts or omissions worsened Plaintiff's condition. Nor is there any medical information in the record about Plaintiff's mental health, let alone correlating Defendant's actions to Plaintiff's mental state.

limited range of motion as a result of injuring his arm, (Pl.'s Dep., p. 14), he offers no medical evidence that taking an x-ray or putting a cast on his still-swollen arm would have improved the healing process or otherwise changed the current status of his left arm. Plaintiff cannot create a genuine dispute of material fact based on his factually unsupported beliefs. See Bald Mountain Park, Ltd. v. Oliver, 863 F.2d 1560, 1563 (11th Cir. 1989) ("Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment.")

In sum, Plaintiff cannot meet his burden of proof on all elements of his Eighth Amendment claim, and Defendant is entitled to summary judgment.

### C. Qualified Immunity

Because Defendant is entitled to summary judgment on the merits of Plaintiff's claim, the Court need not address Defendant's qualified immunity argument. See Scott v. Harris, 550 U.S. 372, 377 (2007) (requiring showing of violation of a constitutional right to complete qualified immunity analysis); Grochowski v. Clayton Cnty., Ga., 961 F.3d 1311, 1319 (11th Cir. 2020) (same); see also Martinez v. Burns, 459 F. App'x 849, 851 n.2 (11th Cir. 2012) (*per curiam*) (recognizing no need to address qualified immunity defense when summary judgment granted on substance of deliberate indifference claim).

### IV. Leave to Appeal *In Forma Pauperis*

The Court should also deny Plaintiff leave to appeal IFP. Although Plaintiff has not yet filed a notice of appeal, it is appropriate to address these issues now. See Fed. R. App. P.

24(a)(3)(A) ("A party who was permitted to proceed in forma pauperis in the district-court action . . . may proceed on appeal in forma pauperis without further authorization, unless the district court - - before or after the notice of appeal is filed - - certifies that the appeal is not taken in good faith . . . ."). An appeal cannot be taken IFP if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. See id.; 28 U.S.C. § 1915(a)(3). Good faith in this context must be judged by an objective standard. See Busch v. Cnty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999) (citing Coppedge v. United States, 369 U.S. 438 (1962)). A party does not proceed in good faith when seeking to advance a frivolous claim or argument. See Coppedge, 369 U.S. at 445. A claim or argument is frivolous when, on their face, the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993) (*per curiam*). Stated another way, an IFP action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. CV 407-085, CR 403-001, 2009 WL 307872, at *1-2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and any appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff IFP status on appeal.

## V.     CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant's motion for summary judgment be **GRANTED**, (doc. no. 31), a final judgment be

18

entered in favor of Defendant, and this civil action be **CLOSED**. The Court further **RECOMMENDS** Plaintiff be **DENIED** leave to appeal IFP.

SO REPORTED and RECOMMENDED this 26th day of March, 2021, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA